2024 IL App (2d) 230387-U
No. 2-23-0387
Order filed January 10, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2176 |
| DEVEON JOHNSON, | ) ) ) | Honorable Salvatore LoPiccolo Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in granting the State's petition to deny defendant pretrial release.

¶ 2    Defendant, Deveon Johnson, appeals the order of the circuit court of Kane County granting the State's petition to deny pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 (West 2022)).[1] For the reasons that follow, we affirm.

---

[1]Article 110 of the Criminal Code was amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act or Safety, Accountability, Fairness and

¶ 3                                    I. BACKGROUND

¶ 4      On October 11, 2023, defendant was charged by complaint with seven offenses, namely: two counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a); (a)(3)(A-5) (West 2022)), both Class 2 felonies; two counts of aggravated unlawful use of a weapon (*Id.* § 5/24-1.6(a)(1) (West 2022)), both Class 2 felonies; unlawful possession of a firearm without a firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2022)), a Class 3 felony; resisting or obstructing a police officer causing injury (720 ILCS 5/31-1(a-7) (West 2022)), a Class 4 felony, and resisting or obstructing a police officer (*Id.* § 5/31-1(a)(1) (West 2022)), a Class A misdemeanor.

¶ 5      That same day, the State filed a verified petition to deny defendant pretrial release. It alleged that the first five of the above-referenced charged offenses would, upon conviction, subject defendant to a sentence of imprisonment without probation, periodic imprisonment, or conditional discharge, and thus qualified defendant for denial of pretrial release (see 725 ILCS 5/110-6.1(a)(1) (West 2022)). It further noted that defendant had a prior conviction for robbery (a Class 2 felony), as well as prior adjudications of delinquency for aggravated battery in 2015 and aggravated battery and mob action in 2016. Moreover, the petition indicated that, at the time of his arrest in the instant offense, defendant was out on pretrial release on a prior Kane County case, wherein defendant was charged with aggravated fleeing/attempting to elude a peace officer (a Class 4 felony). The State alleged that defendant posed a real and present threat to the safety of the community that could not be mitigated by any combination of conditions on his pretrial release.

---

Equity-Today (SAFE-T) Act (Act). Neither of those names is official, as neither appears in the Illinois Compiled Statutes or the public act. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

¶ 6    At the hearing on the petition, the State argued that defendant posed a real and present threat to the community, including the police officers that he interacts with.  By way of proffer, the State informed the trial court of the following, which was based on the police synopsis concerning the instant case.  On October 10, 2023, at 11:43 p.m., officer Russell Nisivaco of the Elgin police department observed a silver Volkswagen Tiguan parked in an area known for illegal drug activity.  Several subjects stood beside the vehicle.  Officer Nisivaco observed the Volkswagen leave the area at a high rate of speed, and he conducted a traffic stop after observing the vehicle cross the center dividing line prior to activating its turn signal.  As Nisivaco exited his police cruiser, he observed defendant, who was located in the back seat, "frantically moving around the passenger area stating to the driver 'Go Go Go What are you doing.' "  When Nisivaco made contact with the occupants of the vehicle, the front seat passenger admitted that cannabis was in the back seat.  Defendant was told to exit the vehicle and, upon doing so, he motioned with his left hand towards his waistband and fled the area on foot.  Officers gave chase and, during the pursuit, defendant removed a firearm from his waistband and tossed it into a wooded area.  Defendant was tackled by another officer, Sergeant McNanna, who sustained bruising and broken skin to his knee in the process.  A canine search of the area where McNanna observed defendant throw the weapon yielded the recovery of a 9mm "ghost gun," which meant that it had no serial number.  The firearm had one 9mm round in the chamber and 13 rounds in the magazine.  The State emphasized that defendant previously had been convicted of robbery for which he was sentenced to five years' imprisonment, and he was therefore prohibited from possessing a firearm or firearm ammunition.  Defendant likewise had no concealed carry license or a valid FOID card.

¶ 7    The State additionally argued that no condition or combination of conditions could mitigate the threat defendant posed to the community because he had demonstrated an inability to comply

with previous court-ordered conditions of release. It emphasized that, at the time of the instant offenses, defendant was out on bond in Kane County case No. 23-CF-786 for aggravated fleeing/attempting to elude a police officer and, as part of a condition of his bond in that case, he was ordered not to commit any further criminal offenses. The State presented a synopsis concerning that case. It related that, on April 8, 2023, police were dispatched to Windham Trail in Carpentersville in response to a report of a disturbance involving a firearm. Shortly after the dispatch, defendant fled the scene in a red Dodge Challenger at a high rate of speed and nearly struck a Carpentersville police officer and an ambulance. An officer in an unmarked vehicle later spotted the vehicle waiting for traffic to clear so that it could turn southbound onto Route 31. The officer pulled his unmarked patrol vehicle into the median to position his vehicle to stop defendant. Defendant made eye contact with the officer and "recognized [him] to be a police officer," and defendant abruptly made a right turn and proceeded northbound on Route 31 at a high rate of speed. The officer initiated his emergency lights, but defendant engaged in various maneuvers, including cutting in front of another vehicle and crossing over the highway median in front of oncoming traffic, and defendant eventually travelled southbound on Route 31. Defendant "was traveling in excess of 21 MPH" over the posted speed limit of 55 miles per hour "to elude being stopped." The synopsis further detailed that, as a result of these maneuvers and the high rate of speed defendant was driving, there was a significant gap between their vehicles. Defendant "show[ed] no intention of stopping," and so the officer turned off his emergency lights and discontinued the pursuit. Defendant continued southbound at a high rate of speed and disobeyed a traffic control signal. The State further asserted that, at the time of the offense alleged in case No. 23-CF-786, defendant was on parole in connection with his robbery conviction.

¶ 8    At the detention hearing, defendant argued that the State had not met its burden of proving

by clear and convincing evidence that the defendant committed the charged offenses because it did not offer any bodycam evidence or in-person testimony from McNanna regarding his observation of defendant discarding a firearm. He also emphasized that a firearm was recovered from the scene only with the assistance of a K-9 unit. Defendant further argued that there was no real and present threat to the community or any specific person because he was not alleged to have attempted to harm anyone during the events that culminated in the underlying charges. Concerning possible conditions that the court could impose short of pretrial detention, defendant argued that electronic home monitoring was "a condition that [he] would abide by."

¶ 9 The trial court granted the State's petition, finding that the State proved by clear and convincing evidence that the proof was evident or the presumption great that defendant committed detainable offenses, that he posed a real and present threat to the safety of the community, including police officers who may encounter him, and that no condition or combination of conditions could mitigate the real and present threat.

¶ 10                                    II. ANALYSIS

¶ 11 On October 13, 2023, defendant filed a form notice of appeal from the detention order pursuant to Illinois Supreme Court Rule 604(d) (eff. Sept. 18, 2023). On December 6, 2023, defendant filed a notice that he would not file a Rule 604(h) memorandum. We therefore look to his notice of appeal, which identifies three grounds for relief, namely that the State: (1) failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the charged offenses; (2) failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case; and (3) failed to meet its burden of proving that no condition or combination of conditions

could mitigate the real and present threat to the safety of any person or persons or the community.

¶ 12    In Illinois, all persons charged with an offense are eligible for pretrial release, which is governed by article 110 of the Code, as amended by the Act.  In limited circumstances, however, the court may detain the defendant pending trial because he or she poses a real and present threat to the safety of any person or persons or the community or has a high likelihood of willful flight to avoid prosecution.  725 ILCS 5/110-6.1(a) (West 2022).  To overcome the presumption that the defendant is eligible for pretrial release, the State bears the burden of proving, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or person in the community based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. *Id.* § 110-6.1(e).  We apply the manifest-weight-of-the-evidence standard to the trial court's factual findings, including whether a defendant poses a threat and whether any conditions would mitigate that threat.  *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.  A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent.  *In re Marriage of Kavchak*, 2018 IL App (2d) 170853, ¶ 65. However, we review the trial court's ultimate determination of pretrial release for an abuse of discretion.  *Trottier*, 2023 IL App (2d) 230317, ¶ 13.  An abuse of discretion only occurs when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court.  *Id*.

¶ 13    Mindful of these principles, we turn to the contentions defendant raised in his notice of appeal.  Regarding issue (1), defendant does not contend that the charged offenses do not make

him eligible for pretrial detention. Rather, he argues that the trial court's determination that he likely committed the charged offenses was against the manifest weight of the evidence because the State presented no live witness testimony, but relied on two police synopses to satisfy its burden. Defendant also points out that the State did not tender to the court during the hearing any bodycam footage depicting him tossing the firearm. According to defendant, these omissions demonstrate that the court's conclusion that he likely committed the charged offenses was against the manifest weight of the evidence. We disagree.

¶ 14    The State's proffer related that, on October 10, 2023, an officer observed several subjects standing beside a silver Volkswagen late at night in an area known for illegal drug activity. The Volkswagen left the area at a high rate of speed and crossed the center dividing line without activating its turn signal. The officer effectuated a traffic stop. As he walked up to the vehicle, the officer observed defendant "frantically moving around" in the back seat of the vehicle and instructing the driver to "Go go go" and inquiring "what are you doing?" Defendant was instructed to exit the vehicle and, as he did so, he motioned with his left hand towards his waistband and fled on foot. During the chase with officers, defendant was observed tossing a firearm into a wooded area. Defendant was ultimately apprehended, and a 9mm "ghost gun" was recovered from the area where defendant was seen throwing a firearm. One round was loaded in the chamber and 13 rounds were in the magazine. Defendant had previously been convicted of robbery, a felony, and had no concealed carry license or a valid FOID card. In short, this evidence is adequate to allow the court to find that there was clear and convincing evidence that the proof was evident or the presumption great that defendant committed one or more qualifying offenses and, accordingly, its finding was not against the manifest weight of the evidence. Defendant argues only that no live witnesses were called to testify and that no "body worn camera was presented" depicting defendant

discarding a firearm. At this stage of the proceedings, we cannot expect that a mini-trial complete with formal testimony and the formal admission of evidence will occur. The State's proffer was adequate to support the court's determination that defendant likely committed the charged offenses.

¶ 15 Next, regarding issue (2), defendant argues that he is not a real and present threat to any person or the community based on the articulable facts of this case because he did not threaten physical harm to anyone, but he merely ran from the officers during a traffic stop and was alleged to have discarded a firearm into a wooded area. The Code provides a nonexclusive list of factors for the trial court to consider in determining "dangerous," meaning he or she poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. 725 ILCS 5/110-6.1(g) (West 2022).

¶ 16 Here, the trial court found that the State had shown that defendant is a threat to the community, including police officers who may encounter him, based on a number of considerations. First, it noted that defendant was previously convicted of robbery (a class 2 felony) and that he had "just *** got off of mandatory supervised release for that robbery" at the time of the instant offense. As a convicted felon, defendant was prohibited from possessing a firearm or firearm ammunition. Moreover, at the time of the instant offenses, defendant was out on bond on a charge of aggravated fleeing/attempting to elude a police officer, which was still pending in Kane County under case No. 23-CF-786. The court noted that said offense "put the safety of the police officers, as well as the community[,] in danger," because of "the way he drove away from the police officers," including nearly hitting a police officer and an ambulance, and traveling at a high rate of speed into oncoming traffic in order to elude the pursuing officer. The court also commented that defendant "has demonstrated a continuing threat to the community in that he is

not going to comply with the rules of society," which included the requirement that, "when you are commanded to stop by a police officer, you stop." The court also noted that the possession of a loaded, untraceable firearm contributed to the court's conclusion that defendant was a real and present threat to the safety of the community and police officers.

¶ 17 We are unpersuaded by defendant's assertion that because he merely fled from the police and discarded a loaded weapon in the instant offenses, he is not dangerous. It is axiomatic that one need not first threaten physical harm upon another person as some sort of prerequisite to actually harming them. The danger, to the police and the community at large, of a convicted felon possessing a loaded firearm when, by virtue of his status as felon, is precluded from possessing a firearm or firearm ammunition, is evident—especially in light of the fact that the recovered firearm is an untraceable "ghost gun." Also, his flight from police was accomplished in a dangerous manner, and he continued to be apt to flee dangerously in more than one encounter with police. We cannot say that the trial court's finding regarding defendant's dangerousness is against the manifest weight of the evidence.

¶ 18 Third, defendant asserts that less restrictive means, short of pretrial detention, would have mitigated any threat to the safety of any person or the community. He emphasizes that he requested electronic home monitoring during the detention hearing, which he asserts "would isolate him from the community and prevent him from being charged with additional offenses." Here, the trial court noted that the conditions it would have imposed would have included that he refrain from possessing a firearm and refrain from committing crimes, and yet defendant "just showed us that he's not going to follow those two." The court also noted that electronic home monitoring would not prevent defendant from possessing a firearm, and such monitoring would allow for occasions where he would be out of his residence with the potential of carrying a firearm. We also note that

defendant, at the time he committed the instance offenses, was out on pretrial release for aggravated fleeing/attempting to elude a peace officer in case No. 23-CF-786, which itself included the condition that he refrain from committing any further criminal offenses or possessing a firearm. Defendant therefore has a demonstrated history of refusing to abide by court-ordered conditions of release. We cannot say that the court's finding—that less restrictive conditions would not assure the safety of the community—is against the manifest weight of the evidence.

¶ 19    Based on the above, the trial court's ultimate decision granting the State's petition for pretrial detention was not arbitrary, fanciful, or unreasonable. Accordingly, we affirm the trial court's ultimate decision to detain defendant while he awaits trial on the instant charges.

¶ 20    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 21    Affirmed.